# IN THE SUPREME COURT OF TEXAS

════════════

NO. 10-0953

════════════

FORD MOTOR COMPANY, PETITIONER,

v.

RICHARD H. GARCIA, RESPONDENT

════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

════════════════════════════════════════

**Argued December 8, 2011**

JUSTICE JOHNSON delivered the opinion of the Court.

This is a dispute over fees awarded to an ad litem appointed in connection with the proposed division of a personal injury settlement between an incapacitated plaintiff and his guardian. The court-appointed attorney requested fees based on an unsworn invoice that specified numerous tasks performed, but did not specify when they were performed, who performed them or the amount of time spent on them. The ad litem testified about who performed some of the tasks, but he did not testify about how much time was spent on the tasks, other than specifying that a minimum of one-quarter hour was invoiced for each one, nor did he testify about any unusual circumstances that made it necessary for persons other than him to perform tasks for which compensation was sought. The trial court awarded the full amount requested and assessed the fees as court costs. The court

of appeals affirmed. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

## I. Background

Jesus Gonzalez was a passenger in a Ford pickup when a tire tread separated and the truck rolled over. The driver was killed and Gonzalez suffered an incapacitating brain injury. Several plaintiffs sued multiple defendants as a result of the accident. Relevant to the issues before us, Gonzalez's wife, Ramona, sued Ford Motor Company individually and as guardian of her husband. After the Gonzalezes and Ford reached a confidential settlement agreement, their attorney filed an "Unopposed Motion for Appointment of Guardian Ad Litem" for Gonzalez because of the conflict of interest between the Gonzalezes regarding division of the settlement. Pursuant to that motion, the trial court appointed attorney Richard Garcia. Garcia concluded that the agreed-upon division of the settlement between Ramona and Gonzalez should be approved by the court, and the court did so.

Ford and Garcia were unable to agree on a fee for his services, so the trial court held a hearing. At the hearing Garcia produced an unverified invoice for $28,260.00 and requested that amount as compensation. The invoice listed sixty-five separate tasks that were completed from December 9, 2008, when Garcia was appointed, to December 19, 2008, when the settlement with Ford was approved. The invoice did not set out who performed the tasks, the dates on which the tasks were performed, the time expended on any task, or a total amount of time spent on all of the tasks. Garcia testified, in relevant part, that (1) his billing rate for this matter was $300.00 per hour, (2) he performed most of the invoiced tasks but not all of them, (3) he did not know how much time

2

it took to perform each invoiced task, and (4) he billed in quarter-hour increments. The trial court awarded the full $28,260.00 and charged the fee to Ford as court costs. The court of appeals affirmed. ___ S.W.3d ___. We granted Ford's petition for review. 54 Tex. Sup. Ct. J. 1578 (Aug. 26, 2011).

Ford argues that Garcia was appointed as a guardian ad litem subject to Rule 173 of the Texas Rules of Civil Procedure; the fee award compensates him for tasks not within the scope of his limited role as guardian ad litem; and even as to tasks within the scope of his limited role, there is neither evidence of how much time was spent on them nor who performed them.[1] Garcia counters that he was appointed as attorney ad litem, not guardian ad litem; as attorney ad litem he was entitled to be compensated for services he performed individually as well as services he was assisted with by "his staff including other lawyers;" and his invoice and testimony were sufficient evidence of reasonableness and necessity to support the compensation award whether he was functioning as an attorney ad litem or guardian ad litem.

We first address the nature of Garcia's role.

## II. Garcia's Role

Relying on *City of Houston v. Woods*, 138 S.W.3d 574, 582 (Tex. App.—Houston [14th Dist.] 2004, no pet.), Garcia contends the fee award is proper because the trial court's appointment

---

[1] Ford does not argue that the trial court abused its discretion by awarding compensation even though Garcia failed to file a verified application. *See* TEX. R. CIV. P. 173.6(b). Accordingly, we do not address the question. However, we note that the rule's language was not lightly chosen. Filing of the application allows defendants to see exactly what is being requested and why, and gives the parties a better opportunity to agree on a fee without the necessity of a court hearing. And if a fee cannot be agreed upon, the filing of an application in advance of the evidentiary hearing will give notice to the defendant of the specifics of the fee request so it may prepare for the hearing, and also will allow the trial court opportunity to prepare for the hearing.

3

order states he was appointed "to serve as Attorney Ad Litem in this litigation as independent counsel for the benefit of Plaintiff Jesus Gonzalez in connection with effectuating Plaintiffs' settlement with Defendant Ford Motor Company." Working from that premise, he maintains that he was properly compensated both for "his services in fulfilling his role as independent counsel to the ward, and his role as an officer and advisor to the trial court." He cites *Woods* for the proposition that an attorney ad litem is to "perform the same services as any attorney, giving legal advice, doing research and conducting litigation for an incapacitated party," and that all the activities on his invoice were proper because they were directed toward determining both whether (1) the proposed settlement was generally appropriate for Gonzalez and (2) the division and structure of the settlement was appropriate given the conflict of interest between Gonzalez and Ramona. We disagree that Garcia was entitled to be compensated for tasks that were not compensable as a guardian ad litem under Rule 173, even though some of those tasks might have been compensable had he truly been appointed as attorney ad litem.[2]

First, *Woods*, a case involving fees for representation of minors, does not support his position. Garcia references only part of a passage in *Woods* in which the court of appeals distinguished the role of a guardian ad litem from that of an attorney ad litem. The full passage gives context to the statement on which he relies:

---

[2] The parties do not disagree about the factors to be considered in determining the reasonableness of compensation awarded to attorneys ad litem and guardians ad litem. *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999) (noting that generally the same factors used to determine the reasonableness of attorney's fees are used to ascertain the reasonableness of guardian ad litem fees); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (listing several factors courts should consider when determining the reasonableness of attorney's fees).

4

> Guardian ad litems and attorney ad litems serve different roles in the representation of minors. A guardian ad litem is not an attorney for the child, but an officer appointed by the court to assist in properly protecting the child's interests. An attorney ad litem, on the other hand, performs the same services as any other attorney—giving advice, doing research, and conducting litigation.

*Id.* at 582 (citations omitted). The court also noted that the source of fees for attorneys ad litem is different from that for guardians ad litem:

> A guardian ad litem is entitled to a reasonable fee for his services to be taxed as costs . . . . However, there is no provision to tax attorney fees as costs to the opposing party. Indeed, attorney fees may not be recovered unless provided for by statute or by contract between the parties. More specifically, no statute provides for the recovery of attorney fees in a negligence action. Instead, attorneys in personal injury cases are compensated out of the funds recovered by the plaintiff on a contingency basis.

*Id.* at 582–83 (citations omitted). Although attorneys representing personal injury plaintiffs in negligence suits are not always compensated on a contingency fee basis as the *Woods* court suggested, the court was correct that while a guardian ad litem's fee may be taxed as court costs pursuant to the rules of procedure, *see*, *e.g.*, TEX. R. CIV. P. 173.6(c), there is no provision for shifting a plaintiff's attorney's fee to the defendant absent a statute or contract allowing for shifting them. *See 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) ("Texas adheres to the American Rule for the award of attorney's fees, under which attorney's fees are recoverable in a suit only if permitted by statute or by contract.").[3] Here, Garcia does not base his claim for attorney's fees on either a statute or contract. And in *Woods*, the court of appeals held that the trial court abused its discretion by assessing attorney ad litem fees as costs to be paid by the

---

[3] Federal courts apply a similar analysis regarding shifting attorney ad litem fees. *E.g.*, *Gaddis v. United States*, 381 F.3d 444, 449 n.6, 454 (5th Cir. 2004) (en banc); *Kollsman v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993).

defendant where the attorney represented minor plaintiffs in a negligence suit for personal injuries—the opposite of what Garcia contends for here. 138 S.W.3d at 583.

Second, a guardian ad litem's duties under the circumstances covered by Rule 173 are those of an officer of the court assisting in properly protecting the incapacitated person's interests when a conflict of interest has arisen between the incapacitated person and the guardian or next friend. The duty of such a guardian ad litem is not the duty of a plaintiff's attorney generally representing the incapacitated person in regard to the cause of action. *See Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006) (per curiam) ("[A] guardian ad litem . . . should not duplicate the work performed by the plaintiff's attorney."); *see also Am. Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n.2 (Tex. 1995) (per curiam). The context of the appointment and duties assigned to the ad litem determine the nature of the appointment and the duties of the ad litem. The burden to ensure that a guardian ad litem's services do not exceed the scope of the role assigned by the trial court is on the ad litem. *See Goodyear Dunlop Tires N. Am., Ltd. v. Gamez*, 151 S.W.3d 574, 582 (Tex. App.—San Antonio 2004, no pet.). An improper designation of the ad litem by the trial court is not controlling as to the nature of the appointment. *See Brownsville-Valley Reg. Med. Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 755 n.4 (Tex. 1995) ("The trial court's improper designation of the ad litem 'is not of controlling import.'") (citation omitted).

Garcia does not claim that he was appointed because Ramona, acting as Gonzalez's guardian, and the attorney she hired, failed to properly represent Gonzalez's interests and Gonzalez needed a separate attorney to prosecute his personal injury claim. *See Vandewater*, 907 S.W.2d at 493 n.2 ("In the event that the next friend takes actions sufficiently adverse to a [ward's] interests, the next

6

friend and her attorney may be replaced."). To the contrary, Garcia's appointment was requested only after Ramona and her attorney reached a settlement with Ford that was to be divided between the Gonzalezes, and the necessity of the division created a conflict. A division was tentatively agreed upon before Ramona's lawyer filed the unopposed motion for appointment of an ad litem to "assist [Jesus Gonzalez] with the issues relating to effectuating the settlement of his claims against Ford Motor Company." The motion used the term attorney ad litem in one sentence, but as the caption and body of the motion made clear, the trial court was being asked to appoint an ad litem only to protect Jesus's interest in relation to division of the settlement. The trial court order stated that Garcia was appointed "to serve as Attorney Ad Litem in this litigation as independent counsel for the benefit of Plaintiff Jesus Gonzalez *in connection with effectuating Plaintiffs' settlement with Defendant Ford Motor Company*." (emphasis added). The judgment awarding fees to Garcia stated that he was appointed as guardian ad litem. And Garcia's testimony at the evidentiary hearing on his compensation request confirmed his understanding that the appointment was as a guardian ad litem, not attorney ad litem:

> Q. Mr. Garcia, you are the same Judge Richard Garcia that was appointed by this Honorable Court as guardian ad litem for an incapacitated person in the proceeding that we're here on today? That would be Jesus Gonzalez?
>
> A. That's correct.

The evidence is conclusive that Garcia was not appointed to act as an attorney ad litem to generally represent Gonzalez in prosecuting his personal injury claim. Rather, he was appointed as a guardian ad litem with the limited role of assisting the trial court in protecting Gonzalez's interest because of the conflict of interest that arose between the Gonzalezes. The appointment substantively

7

falls within the provisions of Rule 173 of the Texas Rules of Civil Procedure. Garcia's contention that his compensation request should be reviewed differently from the manner provided for by Rule 173 lacks merit.

### III. The Fees

The trial court awarded Garcia $28,260.00. Ford challenges the amount for three related reasons. First, some of the activities on the invoice were admittedly performed by persons other than Garcia and the court order appointed only Garcia as ad litem. Second, there is no evidence of how much time was spent performing each invoiced task, so there is no evidence of either how much time is compensable for individual tasks or how much total time is compensable. Third, even if there had been evidence to show which of the invoiced activities Garcia individually performed and how long they took, compensation cannot be awarded for many of those tasks because they were not necessary given the purpose of his appointment.

### A. Standard of Review

The amount a guardian ad litem is awarded as compensation is within the trial court's discretion and an award will not be set aside except for abuse of that discretion. *See Land Rover U.K.*, 210 S.W.3d at 607. A trial court abuses its discretion by ruling (1) arbitrarily, unreasonably, or without regard to guiding legal principles; or (2) without supporting evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

### B. Rule 173 Guardian Appointments

When construing rules of procedure, we apply the same rules of construction that govern the interpretation of statutes. *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007).

We first look to the plain language of the rule and construe it according to its plain or literal meaning. *See, e.g.*, *In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009). In doing so we keep in mind that the rules of civil procedure are given a liberal construction so as "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." TEX. R. CIV. P. 1.

When a guardian ad litem is appointed under circumstances covered by Rule 173, as opposed to other rules or statutes,[4] the guardian has a limited role in the litigation and may be compensated only for limited types of activities. *See* TEX. R. CIV. P. 173.4(b), (c), (d); *Vandewater*, 907 S.W.2d at 493 n.2. Garcia's role falls under Rule 173.4(c) which provides:

> (c) *When Settlement Proposed*. When an offer has been made to settle the claim of a party represented by a next friend or guardian, a guardian ad litem has the limited duty to determine and advise the court whether the settlement is in the party's best interest.

TEX. R. CIV. P. 173.4(c). The rule contemplates appointment of a guardian ad litem "when a party's next friend or guardian appears to have an interest adverse to the party because of the division of settlement proceeds." TEX. R. CIV. P. 173 cmt. 3. The comments to Rule 173 elaborate on the guardian's role and compensation under those circumstances:

> [T]he responsibility of the guardian ad litem as prescribed by the rule is very limited, and no reason exists for the guardian ad litem to participate in the conduct of the

---

[4] *See* TEX. R. CIV. P. 173.1 ("This rule does not apply to an appointment of a guardian ad litem governed by statute or other rules."). Comment 2 to Rule 173 also provides:

> This rule does not apply when the procedures and purposes for appointment of guardians ad litem (as well as attorneys ad litem) are prescribed by statutes, such as the Family Code and the Probate Code, or by other rules, such as the Parental Notification Rules.

TEX. R. CIV. P. 173, cmt. 2.

9

litigation in any other way or to review the discovery or the litigation file except to the limited extent that it may bear on the division of settlement proceeds. A guardian ad litem may, of course, choose to review the file or attend proceedings when it is unnecessary, but the guardian ad litem may not be compensated for unnecessary expenses or services.

*Id.* (citation omitted). Not all Rule 173 guardians ad litem seek compensation, but for those who do, Rule 173.6 prescribes how compensation is to be determined:

173.6. Compensation

(a) *Amount*. If a guardian ad litem requests compensation, he or she may be reimbursed for reasonable and necessary expenses incurred and may be paid a reasonable hourly fee for necessary services performed.

(b) *Procedure*. At the conclusion of the appointment, a guardian ad litem may file an application for compensation. The application must be verified and must detail the basis for the compensation requested. Unless all parties agree to the application, the court must conduct an evidentiary hearing to determine the total amount of fees and expenses that are reasonable and necessary. In making this determination, the court must not consider compensation as a percentage of any judgment or settlement.

(c) *Taxation as Costs*. The court may tax a guardian ad litem's compensation as costs of court.

TEX. R. CIV. P. 173.6(a)–(c).

We stated in *Land Rover U.K.* that "[a] reasonable hourly rate multiplied by the number of hours spent performing necessary services within the guardian ad litem's role yields a reasonable fee." 210 S.W.3d at 608. While necessary services within the proper, limited scope of the Rule 173 guardian ad litem's role are compensable, including those legal services necessarily performed by a lawyer appointed as guardian ad litem, compensation cannot be awarded for legal or other services outside that role, even if they are performed. *See* TEX. R. CIV. P. 173.4 (defining the role of a guardian ad litem); *Land Rover U.K.*, 210 S.W.3d at 607 ("If a guardian ad litem performs work

10

beyond the scope of this role, such work is non-compensable."). Ordinarily only the person appointed as guardian ad litem should be compensated for services under Rule 173. *See* TEX. R. CIV. P. 173.6 & 173 cmt. 7; *Gamez*, 151 S.W.3d at 588. However, Rule 173.6 does not preclude awarding compensation for persons other than the person designated in the trial court's order as guardian ad litem if the evidence shows particular, unusual circumstances making services of other persons necessary for the ad litem's duties to be fulfilled. Such circumstances might exist, for example, if paralegals or other staff under the supervision of the appointed guardian ad litem could perform tasks necessary for the ad litem to properly fulfill his or her appointed role, but at a lesser hourly rate than the ad litem, or an unexpected emergency requires the guardian ad litem to miss a mandatory hearing and an associated attorney familiar with the matter appears instead.[5] *See, e.g.*, TEX. R. CIV. P. 173.4(d)(2). But if a guardian ad litem such as Garcia seeks compensation for activities of persons not authorized in advance by the trial court to act on behalf of the incapacitated person, he or she should identify the persons with particularity and prove the particular, unusual circumstances making the services of the persons necessary for the ad litem's duties to be fulfilled, the specific services they performed, when the services were performed, the amount of time spent performing the services, the necessity of the services in light of the ad litem's appointment, and a reasonable hourly rate for each person. *See Jocson v. Crabb*, 133 S.W.3d 268, 270 (Tex. 2004) (per curiam) (recognizing that parties would be wise to seek direction from the trial court if they disagree

---

[5] In addition, a Rule 173 guardian ad litem might need to incur unusual expenses in order to properly advise the court. For example, expenses for an actuary or accountant to evaluate the economics of a structured settlement may be necessary. Prudence counsels a guardian ad litem to obtain the appointing court's authorization before incurring such expenses. The guardian ad litem should be prepared to prove the necessity of such expenses and their reasonableness if request is made for their payment.

11

about an ad litem's role, but also recognizing that it could be expensive and disruptive if they had to pursue every disagreement to a hearing). Once that is done the trial court will have evidence on which to determine whether to award compensation for the activities of those persons, and if so, how much.

## C. Application

Garcia's invoice and testimony are not legally sufficient evidence to support the amount of compensation he was awarded. First, Garcia was the only person the trial court's order designated to act as Gonzalez's guardian ad litem. His appointment was for a particular, narrow role: protecting Gonzalez's interest in dividing the settlement. *See* TEX. R. CIV. P. 173.4(c). As a guardian ad litem under Rule 173, he was to exercise his independent judgment about the division. That warranted his personal attention to the matter, and ordinarily it would have required only his personal involvement. Garcia does not claim there is evidence of particular, unusual circumstances showing services of other persons were necessary for his ad litem duties to be fulfilled. Even if he did, there is no evidence of who the persons were that performed services, what services they performed, why it was necessary for them to perform the services for Garcia's limited role to be fulfilled, the necessity of the services, the time it took to perform the services, and the reasonable hourly rate for each person.

Garcia admittedly did not perform all of the tasks listed on his invoice, so even if all the tasks were compensable under Rule 173 and the time for each task was proved, matters we address below, there is no evidence to support the amount of compensation awarded to Garcia for having done them. Thus, the evidence is legally insufficient to support the amount he was awarded. The trial

12

court abused its discretion by awarding it, and the court of appeals erred by affirming the award. *See Bocquet*, 972 S.W.2d at 21.

Second, the invoice did not set out the amount of time each task took. Nor did Garcia supply the necessary evidence:

Q. Now, in this [invoice], you don't have any actual times or dates, do you?

A. No, I don't.

Q. Okay. So, it's really impossible for somebody to decipher what days you supposedly did this and how long this took, correct, because there's no information relating to those entries, right?

A. As to what you're making reference to, there's not.

. . . .

Q. Yeah, if I went through each one of these activities as we sit here today, could you put in the time that you have expended on these activities? . . . .

A. I don't have that information with me. Perhaps it could be reconstructed. I will tell you that on any action or matter or document that I review, I do charge a minimum of a quarter hour on anything that you may see listed here.

. . . .

Q. Did you keep time? Drove to Rio Grande City, whatever, met with her, 1.5 hours, two hours, anything like that?

A. I don't have anything like that with me. I can go back and check.

The only evidence of the time spent is Garcia's testimony that he invoiced a minimum of a quarter-hour for each activity, but manifestly, more than a quarter-hour was spent performing some of the activities such as traveling to where the Gonzalezes lived and conferring with them. Although there is evidence that Garcia necessarily spent time in performing his duties as ad litem, the evidence is

13

such that the total number of hours he spent in the representation cannot be calculated on the record before us. Under Rule 173 compensation is to be based on the hours necessarily spent on the representation multiplied by a reasonable hourly fee. TEX. R. CIV. P. 173.6(a) ("If a guardian ad litem requests compensation, he or she may be . . . paid a reasonable hourly fee for necessary services performed."); *Land Rover U.K.*, 210 S.W.3d at 608. The evidence is legally insufficient to support the fees awarded, and the trial court abused its discretion by awarding them. *See Bocquet*, 972 S.W.2d at 21.

The court of appeals calculated a number of hours for the tasks listed on the invoice by dividing the total amount requested ($28,260.00) by the invoiced hourly rate of $300.00. It held that "[w]hen the total number of hours billed is mathematically determinable in this way," direct evidence of total hours is not required and the trial court could simply assess whether that number of hours was reasonable to complete the tasks performed. ___ S.W.3d at ___. We disagree. Such a calculation does not comport with the requirements of Rule 173. *See Land Rover U.K.*, 210 S.W.3d at 607–08. The court of appeals erred by affirming the compensation award.

Third, many of the tasks shown on the invoice were not compensable under Rule 173 because they were not necessary to fulfill the limited role to which Garcia was appointed. *See* TEX. R. CIV. P. 173.4 (defining the role of a guardian ad litem); *Land Rover U.K.*, 210 S.W.3d at 607 ("If a guardian ad litem performs work beyond the scope of this role, such work is non-compensable."). Only those tasks directly and materially bearing on the conflict of interest between Ramona and Gonzalez regarding division of the settlement were necessary. Some of the non-compensable tasks demonstrated by this record were "Receiv[ing] and Review[ing]" (1) multiple motions to transfer

14

venue, responses to those, orders setting hearings on the motions and correspondence relating to the motions and responses; (2) superseded petitions; (3) sundry discovery requests and responses; (4) a motion relating to admission of an attorney to practice *pro hac vice*; (5) correspondence about postponed hearings; (6) pleadings relating to already-settled claims; (7) notices of settlement of minor plaintiffs' claims; and (8) copies of citations issued for defendants. Garcia testified, in part, that the activities he performed were for the purpose of becoming familiar with the lawsuit, representing Gonzalez's interests, and advising the court. But tasks such as those enumerated above were not necessary to fulfilling the limited role for which he was appointed. The trial court did not conform to guiding rules and principles when it awarded compensation for non-necessary activities, thus it abused its discretion. *See*, *e.g.*, TEX. R. CIV. P. 173 & cmts. 3–4, 7; *Land Rover U.K.*, 210 S.W.3d at 607–08. The court of appeals erred by holding otherwise.

## IV. Conclusion

The evidence is legally insufficient to support the full amount awarded to Garcia as compensation, although it is sufficient to show he necessarily spent some amount of time fulfilling his role as guardian ad litem. We reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion. *See Guevara v. Ferrer*, 247 S.W.3d 662, 669–70 (Tex. 2007) (holding that when there is evidence to support damages other than the full amount awarded in the trial court and an appropriate remittitur could not be determined by the court of appeals, the case will be remanded to the trial court); *accord Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 425, 430 (Tex. 2008) (reversing and remanding to the trial court for a reassessment of damages where there was at least some evidence to support an award of damages).

15

_____
Phil Johnson
Justice

**OPINION DELIVERED:** March 30, 2012